**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MAHMOUD KHALIL; CENTER FOR
CONSTITUTIONAL RIGHTS,

          Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
JUSTICE; EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW; UNITED
STATES DEPARTMENT OF JUSTICE
OFFICE OF LEGAL COUNSEL; UNITED
STATES DEPARTMENT OF JUSTICE
OFFICE OF INFORMATION POLICY;
UNITED STATES DEPARTMENT OF
JUSTICE NATIONAL SECURITY
DIVISION; FEDERAL BUREAU OF
INVESTIGATION; UNITED STATES
DEPARTMENT OF STATE; UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY; and UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

          Defendants.

Civil Action No. 25-cv-9674

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

---

**INTRODUCTION**

1.      Plaintiffs, Mahmoud Khalil and the Center for Constitutional Rights ("CCR"),

bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* and the

Privacy Act of 1974 ("PA"), 5 U.S.C. § 552a *et seq.*, seeking declaratory, injunctive, and other

appropriate relief to compel the Defendants, the United States Department of Justice ("DOJ"),

United States Department of Justice Office of Legal Counsel ("DOJ-OLC"), United States

Department of Justice Office of Information Policy ("DOJ-OIP"), United States Department of Justice National Security Division ("DOJ-NSD"), the Executive Office for Immigration Review ("EOIR"), the Federal Bureau of Investigation ("FBI"), the United States Department of State ("DOS"), the United States Department of Homeland Security ("DHS"), and the United States Immigration and Customs Enforcement agency ("ICE") (collectively, "Defendants"), as well as offices and components within Defendant agencies, to produce agency records that have been improperly withheld from Plaintiffs.

2.      Plaintiffs submitted FOIA/PA requests to all Defendants on May 29, 2025, seeking records related to Defendants' punitive targeting of Plaintiff Mahmoud Khalil – including by arresting, detaining and attempting to deport him – for his constitutionally-protected activism in support of Palestinian human rights.[1] A copy of this FOIA/PA request is attached as Exhibit 1.[2]

3.      Mr. Khalil is a Palestinian activist, lawful permanent resident (LPR) and the father and spouse of U.S. citizens. In late 2023 and 2024, as a graduate student at Columbia University, Mr. Khalil was active in protests occurring on campus objecting to the Israeli government's genocidal campaign in Gaza, and the United States' and Columbia's support for it. In particular, he was selected as a mediator between Columbia's Gaza Solidarity Encampment and the University administration and spoke to the press about the goals of the student activism surrounding Gaza.

---

[1]    Plaintiffs re-submitted the same FOIA Request to Defendant DHS on August 21, 2025 after DHS erroneously administratively closed the initial request without any legal basis.

[2]    The attached version of Plaintiffs' FOIA Request excludes the Request's exhibits and also redacts a small amount of personal information. Plaintiffs are happy to provide the Court and Defendants with an unredacted version of this Request or file that version under seal if necessary.

4.      Within its first month in office, the Trump administration adopted a policy to retaliate against and punish Palestinian activists, like Mr. Khalil, for their constitutionally protected advocacy in opposition to Israel's military onslaught on the Palestinian people of Gaza. Mr. Khalil and other targets of this federal policy were selected by extremist anti-Palestinian groups, including Canary Mission and Betar USA, who then coordinated with high-level government officials to ensure that such activists be arrested and deported. Those officials, in turn, took actions under the federal government's policy of retaliation to revoke Mr. Khalil's LPR status and to order him arrested, detained and deported from this country.

5.      Accordingly, on March 8, 2025, plainclothed DHS officers entered Mr. Khalil's apartment building, without a warrant, and arrested Mr. Khalil. The DHS officials, who were in communication with White House officials during the arrest process, transferred Mr. Khalil to New Jersey and then to a remote ICE detention facility in Jena, Louisiana over 1000 miles away from his family and counsel. He was detained there pursuant to the federal government's retaliation policy for 104 days, until he was ordered released by a federal judge on June 20, 2025.

6.      This FOIA request seeks to understand the relationships and communications between the federal agencies and anti-Palestinians organizations and individuals that targeted Mr. Khalil for arrest and deportation. Specifically, it aims to shed light on the ways these organizations have coordinated to target Mr. Khalil and conspired with federal officials to effectuate the detention and deportation of Mr. Khalil and other similarly situated individuals for exercising their constitutionally protected advocacy in support of Palestinian human rights.

7.      The Trump administration's vocal and racist targeting of Palestinian activists and its severe crackdown on First Amendment-protected protest and speech was designed to, and has, chilled activism and freedom of expression for thousands of people across the country. The

public has a compelling interest in understanding the information sought by the FOIA requests – namely, how Defendants have collaborated with private anti-Palestinian groups and individuals to carry out their unconstitutional policy that activists like Mr. Khalil be targeted and punished for their protected expression.

8.     Defendants have unjustifiably failed to produce information requested by Plaintiffs. To vindicate the public's statutory right to information responsive to our FOIA request, Plaintiffs seek declaratory, injunctive, and other appropriate relief to compel Defendants to immediately process Plaintiffs' Requests and release records that they have unlawfully withheld.

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. §§ 552(a)(4)(B), 552(a)(6)(C)(i), and 552a(g)(1). This Court also has jurisdiction under 28 U.S.C. §§ 1331 and 1346(a)(2).

10.     Venue lies in this district pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552a(g)(5) and 28 U.S.C. §§ 1391(e) and 1402(a), as CCR resides in this district.

## PARTIES

11.     Plaintiff Mahmoud Khalil is an advocate for Palestinian human rights, a graduate of Columbia University, and a lawful lermanent resident (LPR). He was a negotiator for Columbia's Gaza Solidarity Encampment and frequently spoke to the press. Pursuant to the aforementioned policy of retaliation, he was arrested on March 8, 2025 by plainclothed DHS agents, and transferred to ICE detention in Louisiana. Mr. Khalil's U.S. citizen wife was eight months pregnant with their first child at the time of his arrest, and Mr. Khalil missed the birth of his son while he was detained.

12.     Plaintiff CCR is a non-profit, public interest legal and advocacy organization that engages in the fields of civil and international human rights. CCR's diverse issue areas include litigation and advocacy around immigrants rights, as well as challenging racial and ethnic profiling. One of CCR's primary activities is the publication of newsletters, know-your-rights handbooks, legal analysis of current immigration law issues, and other similar materials for public dissemination. These and other materials are available through CCR's Development, Communications, and Advocacy Departments. CCR operates a website, http://ccrjustice.org, which addresses the issues on which the Center works. CCR staff members often serve as sources for journalists and media outlets, including on issues related to racial justice, racial discrimination, and immigrant rights.

13.     CCR has taken a particular interest in publicizing recent abusive immigration practices engaged in by CBP and ICE and in publicizing government and private actors' targeting and harassment of Palestinian activists in the United States and abroad.  CCR also represents Mr. Khalil in his challenge to his unlawful detention and removal proceedings. As part of that representation, CCR has engaged in public education and advocacy to raise awareness about Mr. Khalil's case. In addition, CCR regularly issues press releases, has an active social media presence with thousands of followers, and also issues regular email updates sent to over 50,000 supporters about developments and news pertaining to CCR's work.

14.     Defendant FBI is a component of the United States Department of Justice ("DOJ"), a department of the Executive Branch of the United States Government. The FBI is tasked with, among other things, gathering intelligence and conducting investigations on foreign and domestic targets.

15.     Defendant DOS is a department of the Executive Branch of the United States responsible for developing and implementing the United States' foreign policy.

16.     Defendant DOJ is an agency of the Executive Branch of the United States tasked with overseeing the domestic enforcement of federal laws. Defendants DOJ-OLC, DOJ-OIP, DOJ-NSD, EOIR are all components within the DOJ.

17.     Defendant DHS is a department of the Executive Branch of the United States responsible for overseeing, *inter alia*, immigration enforcement, antiterrorism work, and cybersecurity.

18.     Defendant ICE is a component of DHS that enforces immigration and customs laws and is responsible for the detention and removal of immigrants.

19.     FBI, DOS, DOJ, DOJ-OLC, DOJ-OIP, DOJ-NSD, EOIR, DHS, and ICE are "agencies" within the meaning of 5 U.S.C. §§ 552(f)(1) and 552a(a)(1).

## STATEMENT OF FACTS

20.     Mahmoud Khalil is a Palestinian grandchild of a family expelled from their home in Palestine in 1948. He was born in a refugee camp in Syria, where he lived until he fled to Lebanon at age 18 out of fear that he would be harmed by the Assad regime in Syria for his human rights advocacy. In Lebanon, he worked, learned English, and eventually obtained a University degree in computer science. He became interested in international human rights and diplomacy, which eventually led him to receive a scholarship to study at the School of International and Public Affairs (SIPA) at Columbia University, starting in the summer of 2023.

21.     He holds Algerian citizenship. He is married to a United States citizen and is a lawful permanent resident of the United States.

**The Targeting, Arrest and Attempted Deportation of Mr. Khalil for His Pro-Palestinian Activism**

22.     Mr. Khalil was a prominent and outspoken student activist while at Columbia University. Recognized as a respected and mature conciliator, at the time that student encampments were erected on Columbia's campus, Mr. Khalil was asked by other students to serve as a mediator between university officials and campus activists due to his positive relationship with Columbia's administration. He was sometimes the public face of student protests on Columbia's campus against Columbia's and the U.S. government's complicity in Israel's military assault on the Palestinian population of Gaza.

23.     On March 8, 2025, while a student at Columbia, plainclothed Department of Homeland Security (DHS) officers arrested and detained Mr. Khalil in his university apartment for no reason other than his constitutionally-protected advocacy for Palestinian rights.

24.     Beginning in January 2025 and in the lead up to his arrest, Mr. Khalil was a target of an ugly campaign by private anti-Palestinian groups, including Betar, Canary Mission, Documenting Jew Hatred on Campus, and Columbia Alumni for Israel. Those groups doxxed[3] and harassed Mr. Khalil, by slandering him as anti-semitic and a terrorist sympathizer. These groups also targeted numerous other students who spoke out against Israel's human rights violations. After the Trump administration took office and emboldened by their access to high-level administration officials, these groups engaged in an effort to get Mr. Khalil arrested and deported precisely because those groups sought to silence him and deter others from speaking out against an unfolding genocide in Gaza.

---

[3]     *Dox or Doxx*: "To publicly identify or publish private information about (someone) especially as a form of punishment or revenge." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/dox. Accessed 12 Nov. 2025.

25.     In fact, prior to his March 8, 2025 arrest by plainclothed DHS agents, several of these groups tagged federal agencies or officials, including Secretary Rubio and Immigrations and Customs Enforcement ("ICE") on social media, demanding that federal officials revoke  Mr. Khalil's visa and deport him. See the following images:



Available at:
https://x.com/Betar_USA/status/1884796686020550930?s=20;



Available at:
https://x.com/CampusJewHate/status/1898081410415837481

26.     Mr. Khalil did not, in fact, have a visa, as he is a lawful permanent resident with a green-card.

27.     Nevertheless, the DHS officers who arrested him repeated the same misinformation as was promulgated by these anti-Palestinian groups, informing Mr. Khalil that his visa had been revoked. Though confused by Mr. Khalil's proof of his LPR status, these DHS officers arrested him anyway indicating that this status, too, had been revoked.

28.     Almost immediately after Mr. Khalil's arrest, private anti-Palestinian groups, including Betar USA, claimed credit for it.[4]

29.     The Department of Homeland Security ("DHS") initially claimed Mr. Khalil was removable based on a determination by Secretary of State Marco Rubio that his "presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States," invoking a rarely-used provision of the Immigration and Nationality Act. (Fourth Am. Compl. at Para. 52, *Khalil v. Trump*, 786 F. Supp. 3d 871 (D.N.J. 2025)). Thus, the express – and unprecedented – grounds for the Rubio Determination seeking to deport Mr. Khalil was nothing other than his constitutionally protected expression.

30.     A week after the filing of his initial habeas petition, on March 17, 2025, the government added a separate allegation against Mr. Khalil, claiming that he willfully misrepresented material facts on his application for adjustment of status, a pretextual claim in furtherance of the deportation effort. (*Id.* at Para. 107)

31.     On April 9, 2025, Mr. Khalil received an undated two-page memorandum citing information from "DHS/ICE/HSI regarding the participation and role[] of … Khalil in

---

[4]     Anna Betts, *Pro-Israel group says it has 'deportation list' and has sent 'thousands' of names to Trump officials.* The Guardian (March 14, 2025), https://www.theguardian.com/us-news/2025/mar/14/israel-betar-deportation-list-trump.

antisemitic protests and destructive activities" on U.S. campuses.[5] This memorandum was the sole evidence provided for the Secretary's determination.

32.     On June 11, 2025, United States Judge Michael Farbiarz of the District of New Jersey granted Mahmoud Khalil's request for a preliminary injunction pursuant to Mr. Khalil's *habeas corpus* petition, enjoining his detention and removal under the Secretary of State's "foreign policy" determination because the Determination was unconstitutionally void for vagueness and presumptively violated Mr. Khalil's Due Process Rights. (*Khalil v. Trump*, 786 F. Supp. 3d 871 (D.N.J. 2025)).

33.     In enjoining Mr. Khalil's unconstitutional detention and planned deportation, Judge Farbiarz found that Mr. Khalil's detention "almost surely" resulted from the Rubio Determination rather than the alleged misrepresentation on his residency application, and that it imposed irreparable harm by chilling Mr. Khalil's and others' constitutionally protected speech. *Id* at 879.

34.     On June 20, 2025 Judge Farbiarz ordered Mr. Khalil released on bail, in part because of the extraordinary circumstances resulting from detention based on protected speech.

35.     In total, Mr. Khalil was detained in ICE custody for over ten weeks in Jena, Louisiana–thousands of miles from his family and legal counsel–before being released via a federal court-ordered bail determination on June 20, 2025.

36.     Mr. Khalil's wife was eight months pregnant with their first child at the time of his arrest. During his detention, Mr. Khalil missed the birth of their son.

---

[5]     Lauren Mascarenhas & Gloria Pazmino, *Newly-released memo from Rubio details government's only evidence in effort to deport Mahmoud Khalil,* CNN (Apr. 10, 2025), https://www.cnn.com/2025/04/10/us/mahmoud-khalil-evidence-deadline.

37.    Mr. Khalil continues to challenge the government's unlawful attempt to deport him for his constitutionally protected expression in federal and immigration court.

### The Broader Campaign by Anti-Palestinian Groups to Punish and Silence Palestinians and Their Supporters is Patently Unconstitutional

38.    Mr. Khalil's arrest did not occur in isolation.

39.    Since at least 2015, organizations including Canary Mission and CAMERA, among others, have engaged in coordinated campaigns to target student activists like Mr. Khalil.

40.    These campaigns include doxxing and falsely branding students as antisemitic and terrorist sympathizers, on the distorted and racist idea that advocacy for Palestinian human rights is necessarily aligned with violence or terrorism and that criticism of the actions of the government of the state of Israel are inherently anti-semitic.

41.    Following the election of Donald Trump in 2024, groups including Betar USA, Middle East Forum, Documenting Jew Hatred on Campus, Columbia Alumni for Israel, Shirion Collective, Capital Research Center, Betar USA, and Canary Mission among others, have sought to leverage their ideological and political connections to Trump administration officials, in a coordinated effort to to target such student activists for arrest and deportation.

42.    At least eight other students and academics who have engaged in advocacy and support for Palestinian human rights have faced arrest, detention, or deportation, or threats thereof, shortly after being targeted, doxxed, or harassed by the same anti-Palestinian groups. These students include Mohsen Mahdawi (Columbia University), Rümeysa Öztürk (Tufts University), Momodou Taal (Cornell University), Dr. Badar Khan Suri (Georgetown University), Efe Ercelik (University of Massachusetts Amherst), Ranajani Srinivasan (Columbia University), Leqaa Kordia (Columbia University), and Yunseo Chung (Columbia University). *See* Plaintiffs' FOIA Request, Exhibit 1 at 9.

43.     As in the case of Mr. Khalil, the arrests (or attempted arrests), detentions, and deportations of student activists who have advocated for Palestinian human rights have consistently been found unconstitutional by federal courts across the country.

44.     On March 25, 2025, a federal court issued a temporary restraining order prohibiting ICE from detaining Ms. Chung, on the grounds that doing so would reflect unconstitutional First Amendment retaliation.

45.     On April 30, 2025, a federal judge ordered Mr. Mahdawi released from detention, concluding that he had raised a substantial claim of First Amendment retaliation.

46.     On May 8, 2025, a federal judge ordered Mr. Ercelik released from ICE detention, finding that his arrest was likely in retaliation for his First Amendment activity in support of Palestinians. It also found that only one day after Betar tweeted, "we have submitted his name for deportation", the State Department revoked Ercelik's visa relying on a memo that referenced his "activities" and "rhetoric." *Ercelik v. Hyde,* No. 25 CV 11007 at 22 (D. Mass, May 8, 2025). The court concluded, "Respondents' pursuit of detention seems to have been almost exclusively triggered by Betar Worldwide." *Id.*

47.     On May 9, 2025, Ms. Öztürk was ordered released after a federal court found she had raised substantial claims that her detention violated the First Amendment and due process.

48.     On May 14, 2025 a federal judge ordered Mr. Khan Suri released from detention, finding that his arrest and detention was likely in violation of Mr. Khan Suri's First Amendment rights.

49.     Additionally, on September 30, 2025, Judge William Young of the District of Massachusetts found, in what he called "perhaps the most important [case] ever to fall within the jurisdiction of the court," that the Trump administration engaged in an unconstitutional policy of

"ideological deportation" by targeting students and scholars who criticized Israel or supported Palestinians. *Am. Ass'n of Univ. Professors v. Rubio*, No. CV 25-10685-WGY, 2025 WL 2777659, at 1 (D. Mass. Sept. 30, 2025)

50.    Evidence at trial showed that the federal government had decided who to target for arrest based on more than 5,000 names of protestors supplied by Canary Mission, preparing reports on roughly 200 individuals–including Mr. Khalil.

51.    The court found that the federal government also relied on names supplied by Betar USA. *Id*. at 26.

52.    The court concluded that this policy violated the First Amendment and the Administrative Procedure Act, condemning it as "truly scandalous and unconstitutional suppression of free speech."*Id.* at 39.

53.    Mr. Khalil's arrest and detention occurred in the context of ongoing coordinated efforts involving private anti-Palestinian organizations to punish student activists through federal enforcement action. Records are sought to clarify the extent of communications and coordination between federal agencies and these outside organizations, as well as the bases for the Secretary's foreign-policy determination.

## The Records Sought are of Widespread Media Interest

54.    The targeting of Mr. Khalil continues to be of enormous public interest, and has remained a national and international news story in the months since our FOIA request was first filed.

55.    There have been numerous investigative reports about the current presidential administration's plan to target the pro-Palestine movement.[6]

---

[6]    *See for example*: Ali Harb, *What is Project Esther, the playbook against pro-Palestine movement in US?,* Al Jazeera (May 31, 2025), https://www.aljazeera.com/news/2025/5/31/what-is-project-esther-the-playbook-against-

56.     Nearly every major national and international news outlet reported on Mr.

Khalil's release from detention on June 20th and the days following, including the New York

Times,[7] Time Magazine,[8] CNN,[9] the BBC,[10] Al Jazeera,[11] Reuters,[12] Fox News,[13] and the

Associated Press.[14]

pro-palestine-movement-in-us; The Daily: *Project 2025's Other Project* (July 16, 2025),
https://www.nytimes.com/2025/07/16/podcasts/the-daily/project-esther-antisemitism-heritage-foundation.html; Ali
Harb, *Canary Mission: How US uses a 'hate group' to target Palestine advocates*, Al Jazeera (July 11, 2025)
https://www.aljazeera.com/news/2025/7/11/canary-mission-how-us-uses-a-hate-group-to-target-palestine-advocates;
Hannah Gais, *For Betar or Worse,* The Baffler (August 26, 2025) https://thebaffler.com/latest/for-betar-or-worse-
gais
[7]     Jonah E. Bromwich, *Mahmoud Khalil Returns to New York After Months in Detention*, The New  York Times
(June 21, 2025), https://www.nytimes.com/2025/06/21/nyregion/mahmoud-khalil-return-to-new-york.html.
[8]     Nik Popli, *Judge Orders Release of Mahmoud Khalil 3 Months After Trump Administration Detained Him,*
Time (June 20, 2025),  https://time.com/7296305/mahmoud-khalil-released/.
[9]     Mark Morales, Dalia Faheid, Gloria Pazmino, *Palestinian activist Mahmoud Khalil reunited with his wife,
newborn son after spending months at a Louisiana detention center,* CNN (June 23, 2025),
https://www.cnn.com/2025/06/20/us/mahmoud-khalil-ordered-released-by-judge .
[10]     Kayla Epstein, *Columbia activist Mahmoud Khalil freed from detention*, CNN (June 20 2025),
https://www.bbc.com/news/articles/clylv796ekgo
[11]     Al Jazeera Staff, *US judge orders release of pro-Palestinian advocate Mahmoud Khalil,* Al Jazeera (June 20,
2025),
https://www.aljazeera.com/news/2025/6/20/us-judge-orders-release-of-palestine-advocate-mahmoud-khalil
[12]     Jonathan Allen, Luc Cohen and Kathleen Flynn, *Pro-Palestinian activist Khalil walks free after US judge
orders release,* Reuters (June 21, 2025), https://www.reuters.com/legal/government/us-judge-orders-release-pro-
palestinian-activist-khalil-2025-06-20/
[13]     Brie Stimson, *Anti-Israel activist Mahmoud Khalil released following judge's order,* Fox News (June 20, 2025),
https://www.foxnews.com/us/anti-israel-activist-mahmoud-khalil-released-following-judges-order
[14]     Sophie Bates and Philip Marcelo, *Columbia protestor Mahmoud Khalil freed from immigration detention,*
Associated Press (June 20, 2025) https://apnews.com/article/mahmoud-khalil-release-columbia-protest-trump-
immigration-69162d21ab22377b1c1c08cf2c83d6cd

57.    Mr. Khalil's legal case has continued to make headlines, even after his release, including in mainstream outlets such as the New York Times,[15] the Associated Press,[16] the BBC,[17] CBS News,[18] the New Yorker,[19] Al Jazeera,[20] CNN,[21] and Fox News.[22]

58.    Numerous lawmakers, including Congressional representatives and at least one United States senator, visited Mr. Khalil while he was detained, and Mr. Khalil's visit after his release to Capitol Hill to meet with lawmakers to discuss his targeting was similarly widely reported.[23]

59.    Mr. Khalil has continued his advocacy on Capitol Hill, most recently alongside celebrities Cynthia Nixon and Morgan Spector to call for Congress to support the Block the Bombs Act.[24]

60.    In addition, numerous news outlets reported on the testimony elicited in the *AAUP v. Rubio* trial, in which high-level federal officials, including several who are agents of the

---

[15]    Jonah E. Bromwich, *Mahmoud Khalil Asks Federal Judge to Intercede after Deportation Order.* New York Times (September 18, 2025), https://www.nytimes.com/2025/09/18/nyregion/mahmoud-khalil-deportation-order.html

[16]    Jake Offenhartz,, *An immigration judge ordered Mahmoud Khalil deported. What happens now?.* Associated Press (September 18, 2025), https://apnews.com/article/mahmoud-khalil-trump-palestinian-deportations-96781307b487e7f616578352b1d94d01

[17]    James Chater, *US judge orders deportation of Palestinian activist Mahmoud Khalil.* BBC (September 18, 2025), https://www.bbc.com/news/articles/cj9zv8xnml8o

[18]    Joe Walsh, *Judge orders Columbia activist Mahmoud Khalil to be deported to Algeria or Syria.* CBS News (September 18, 2025). https://www.cbsnews.com/news/judge-orders-columbia-mahmoud-khalil-deported-algeria-syria/

[19]    Dan Greene, *Mahmoud Khalil, Back Home.* The New Yorker (September 22, 2025), https://www.newyorker.com/magazine/2025/09/29/mahmoud-khalil-back-home

[20]    Al Jazeera Staff, *US judge orders deportation of activist Mahmoud Khalil to Syria, Algeria* Al Jazeera (September 18, 2025), https://www.aljazeera.com/news/2025/9/18/us-judge-orders-deportation-of-activist-mahmoud-khalil-to-syria-algeria

[21]    Reuters, *US immigration judge orders Khalil deportation, his lawyers say separate ruling protects him.* CNN, (September 17, 2025), https://www.cnn.com/2025/09/17/us/mahmoud-khalil-deportation-ruling

[22]    Emma Bussey, *Immigration judge orders deportation of* https://www.foxnews.com/politics/immigration-judge-orders-mahmoud-khalil-deported-syria-algeria

[23]    Al Jazeera Staff, *'My duty': Columbia protester Mahmoud Khalil meets lawmakers at US Capitol.* Al Jazeera (July 22, 2025), https://www.aljazeera.com/news/2025/7/22/my-duty-columbia-protester-mahmoud-khalil-meets-lawmakers-at-us-capitol

[24]    Prem Thakker and Team Zeteo, *Mahmoud Khalil and Cynthia Nixon Come to DC to Demand Congress 'Block the Bombs'.* Zeteo, (September 12, 2025), https://zeteo.com/p/mahmoud-khalil-and-cynthia-nixon

Defendants, testified publicly about the decision to target Mr. Khalil and others for arrest and deportation for their Palestine solidarity activism.[25]

61.     The ways the Trump Administration is relying on private, anti-Palestinian groups and individuals in its effort to target activists like Mr. Khalil with the full force of federal law enforcement simply for constitutionally protected activity demands immediate and urgent transparency.

62.     This FOIA request is important in order to provide the public an understanding of the participants and their actions to punish pro-Palestinian activists, so as to more broadly suppress one side of a critical public debate.

**Plaintiffs' Requests for Information**

63.     On May 29, 2025, CCR sent a request for records pursuant to FOIA, 5 U.S.C. § 552, *et seq.*, and PA, 5 U.S.C. § 552a, *et seq.*, to each of the Defendants via email and on-line forms.

64.     Plaintiffs' Request was specific: it provided specific names of organizations and individuals, as well as social media handles and in available e-mail addresses, to identify the communications sought. It also specified specific types of communications sought.

65.     Plaintiffs' Request included appropriate forms signed by Mr. Khalil consenting to the disclosure of personal information relating to himself.

66.     Plaintiffs' Request sought a waiver of applicable fees under 5 U.S.C. § 552(a)(4)(A)(iii) because "disclosure of the requested records is in the public interest because it

---

[25]     Christian Farias, *A Federal Trial Reveals the Sprawling Plan Behind Trump's Attacks on Pro-Palestinian Students,* The New Yorker (July 21, 2025), https://www.newyorker.com/news/the-lede/a-federal-trial-reveals-the-sprawling-plan-behind-trumps-attacks-on-pro-palestinian-students; BrieAnna J Frank, *Two big cases underway over Trump's higher education policy. Here are the key takeaways,* USA Today (July 22, 2025), https://www.usatoday.com/story/news/nation/2025/07/22/court-hearings-trump-deportations-funding-cuts/85315243007/

is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester." CCR is a non-profit entity with no commercial interest in the records requested, which are crucial to public understanding of Defendants' operations. Mr. Khalil has no commercial interest in information related to himself.

67.    Plaintiffs' Request sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(i)(I), citing a "compelling need" for the information because of the urgent need to inform the public of how Defendants' have and potentially continue to monitor Mr. Khalil's and others' actions, and how private organizations have contributed to his arrest, detention, and attempted deportation.

68.    To date, Plaintiffs have received zero records from any of the Defendant agencies.

**Defendants' Failures to Respond**

*FBI Response*

69.    On June 6, 2025, Defendant FBI acknowledged our FOIA/PA Request and assigned it the number 1669908-000.

70.    On August 4, 2025, the FBI made a final determination on Plaintiffs' FOIA/PA request which it had assigned the number NFP-1621269, and administratively closed the Request, stating it was "overly broad." This FBI response was extremely vague as to which FOIA/PA request the agency was responding to with this determination.

71.    On August 17, 2025, Plaintiff CCR emailed the FBI to gain clarity on which FOIA Request its August 4, 2025 determination was in relation to, as directed by the FBI in its determination letter, at the email address foipaquestions@fbi.gov. The same day, CCR received an auto-response from the FBI which stated that "a reply is forthcoming."

72.     To date, Plaintiffs' have never received a response to its August 17, 2025 email.

73.     Having not heard back from the FBI, because the FBI's August 4, 2025 letter listed all the Defendant agencies in its header, Plaintiffs assumed it likely was in relation to this FOIA Request, and appealed its final determination on September 5, 2025.

74.     On October 6, 2025, the FBI denied expedited processing of FOIA #1669908-000.

75.     On October 10, 2025, Plaintiffs appealed the FBI's denial of expedited processing in regards to Request #1669908-000.

76.     As of this filing, Plaintiffs have received no further responses from the FBI in regards to either of the numbers it has assigned to our FOIA Request.

77.     The FBI has missed its statutory deadline of 20 business days to make a determination on Plaintiffs' FOIA Request, including its August 4, 2025 response. Plaintiffs have therefore exhausted their administrative remedies in regards to Defendant FBI.

*DOS Response*

78.     On July 31, 2025, Defendant DOS acknowledged Plaintiffs FOIA/PA Request via letter attached to email and assigned it number F-2025-23052.

79.     In its July 31, 2025 email, DOS denied Plaintiffs' request for expedited processing and denied Plaintiffs' request for a fee waiver.

80.     On September 4, 2025, Plaintiffs administratively appealed DOS's denial of both expedited processing and fee waiver in regards to their FOIA Request.

81.     On September 8, 2025, DOS acknowledged Plaintiffs' administrative appeal via email.

82.     To date, Plaintiffs have received no further correspondence or response from DOS to their FOIA Request.

83.     Defendant DOS has missed its statutory deadline of 20 business days to make a determination on Plaintiffs' FOIA Request. Plaintiffs have therefore exhausted their administrative remedies in regards to Defendant DOS.

*DOJ and DOJ Subcomponents' Response*

84.     On June 2, 2025, Defendant DOJ sent a letter via email which acknowledged receipt of Plaintiffs FOIA/PA Request, assigned it number EMRUFOIA052925 and referred the entire FOIA Request to the FBI.

85.     On July 31, 2025, CCR appealed the DOJ's decision to refer our FOIA request to the FBI and otherwise administratively close our FOIA request.

86.     On August 1, 2025, the DOJ acknowledged our appeal via email.

87.     On September 16, 2025, the Defendant DOJ-OIP acknowledged our FOIA request, assigned it tracking number FOIA-2025-06744, and denied our request for expedited processing.

88.     On September 17, 2025 Defendant DOJ-OLC acknowledged our FOIA Request and assigned it tracking number #FY25-438. In its response, it also denied our request for expedited processing.

89.     On September 23, 2025, the Defendant DOJ-NSD acknowledged our FOIA request and assigned it tracking number #FY25-629.

90.     On September 29, 2025, Defendant EOIR (a component of the DOJ) sent Plaintiffs three separate emails and assigned a tracking number to our Request. The first EOIR email acknowledged our FOIA Request. The second email stated EOIR would administratively

close the Request in 30 days because the Request allegedly did not "define a set of records" to search for. In its third email, EOIR denied our request for expedited processing.

91.    On October 8, 2025, Plaintiffs responded to Defendant EOIR's email threatening to "close" Plaintiffs' FOIA Request and stated processing must continue. In a separate letter, CCR administratively appealed EOIR's denial of expedited processing.

92.    On October 8, 2025, Plaintiffs appealed Defendant DOJ-OLC's denial of expedited processing.

93.    On October 8, 2025, Plaintiffs appealed Defendant DOJ-OIP's denial of expedited processing.

94.    To date, Plaintiffs have received no further response from the Defendant DOJ or any of its subcomponents, including Defendants DOJ-OIP, DOJ-OLC, DOJ-NSD, or EOIR.

*DHS Response*

95.    On June 5, 2025, Defendant DHS responded and stated it would administratively close Plaintiffs' FOIA Request in 30 days for allegedly being "too broad" while providing no specific legal justification for the closure.

96.    On August 21, 2025, Plaintiffs refiled their FOIA Request with DHS.

97.    On August 22, 2025, Defendant DHS responded and erroneously stated Plaintiffs' FOIA request was allegedly "too broad in scope or did not identify which records [Plaintiffs] is seeking."

98.    On October 8, 2025, Plaintiffs administratively appealed DHS's constructive denial of our FOIA Request.

99.    To date, Plaintiffs have received nothing further from Defendant DHS.

100.    Defendant DHS has missed its statutory deadlines in regards to Plaintiffs' FOIA Request. Plaintiffs have therefore exhausted their administrative remedies in regards to Defendant DHS.

*ICE Response*

101.    On June 23, 2025, Plaintiffs received an email from Defendant ICE acknowledging our FOIA Request and assigning it number 2025-ICFO-39987.

102.    ICE's June 23, 2025 email stated our Request was "too broad in scope" and that the agency would administratively close the request in 30 days if we did not provide additional information.

103.    On July 15, 2025, Plaintiffs responded to ICE's email, showing that our FOIA request was not overly broad and telling the agency to continue processing per its legal obligations.

104.    To date, Plaintiffs have received no further responses from Defendant ICE in response to our FOIA Request.

105.    Defendant ICE has missed its statutory deadline of 20 business days to make a determination on Plaintiffs' FOIA Request. Plaintiffs have therefore exhausted their administrative remedies in regards to Defendant ICE.

**CLAIMS FOR RELIEF**

**<u>First Claim For Relief</u>**

**Violation of FOIA for Failure to Disclose and Release Responsive Records**

106.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

107.    By failing to make a determination on Plaintiffs' FOIA requests within the mandated statutory timeframe, by failing to disclose and release the requested records, and by failing to conduct an adequate search reasonably calculated to uncover responsive records, Defendants have violated the public's right, advanced by the Plaintiffs, to agency records under 5 U.S.C. §§ 552 *et seq*.

## Second Claim For Relief

### Violation of FOIA for Improper Denial of Plaintiffs' Request for Expedited Processing

108.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

109.    By denying or failing to respond timely to Plaintiffs' requests for expedited processing, Defendants have violated Plaintiffs' rights under 5 U.S.C. § 552(a)(6)(E) and Defendants' own regulations.

## Third Claim For Relief

### Violation of FOIA for Failing to Grant Plaintiffs' Request for Fee Waiver

110.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

111.    By failing to respond, failing to non-conditionally grant, or denying Plaintiffs' request for fee waivers, Defendants have denied Plaintiffs' rights under 5 U.S.C. § 552(a)(4)(A)(iii) and Defendants' own regulations.

## Fourth Claim For Relief

### Violation of PA for Failing to Disclose Responsive Records

112.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

113.    Plaintiffs are seeking access to information about Mr. Khalil, who has consented to the disclosure of his records.

114.    Records related to Mr. Khalil are contained in Defendants' system of records, as described under 5 U.S.C. § 552a(a)(4)-(5).

115.    Plaintiffs have exhausted all required and available administrative remedies.

116.    By failing to provide records about Mr. Khalil that are maintained in a system of records, Defendants have violated Plaintiffs' rights under 5 U.S.C. §§ 552a(d)(1), (g)(1)(B) and Defendants' own regulations.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court:

(a)    Order Defendants to immediately make a full, adequate, and expedited search for the requested records;

(b)    Order Defendants to engage in expedited processing in this action;

(c)    Enjoin Defendants from assessing fees or costs for the processing of the FOIA/PA Request;

(d)    Order Defendants, upon completion of expedited processing, to disclose the requested records in their entirety and make copies available to Plaintiffs no later than ten days after the Court's order;

(e)    Award Plaintiffs its costs and reasonable attorney's fees incurred in this action as provided by 5 U.S.C. §§ 552(a)(4)(E), 552a(g)(3)(B); and

(f)    Grant any other and further relief as this Court may deem just and proper.


Dated: November 20, 2025
New York, NY

Respectfully submitted,

*/s/ Adina Marx-Arpadi*
Adina Marx-Arpadi
Baher Azmy

Diala Shamas
Samah Sisay

Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
212-614-6464
amarxarpadi@ccrjustice.org
bazmy@ccrjustice.org
dshamas@ccrjustice.org
ssisay@ccrjustice.org

*Attorneys for Plaintiffs*